UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 96-70-02 ML |
| | : | |
| JASON E. SMITH | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Jason E. Smith ("Defendant") is in violation of the terms of his supervised release and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, hearings were conducted on December 11 and 15, 2006. At the December 15, 2006, hearing, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms of his supervised release. Based on that admission, I find that Defendant has violated supervised release. For the reasons stated herein, I **recommend that Defendant be sentenced to a term of imprisonment of four (4) months to be followed by a term of supervised release for forty-one (41) months.**[1] As a special condition of that supervised release, I also recommend that he be required to pay the balance of the previously ordered restitution of $123,198.37.

[1] The recommended sentence of incarceration is one month less than the five months which the Court stated at the conclusion of the December 15, 2006, violation hearing that it would recommend. The Court's reasons for making this change are explained herein at 13-14.

**Background**

Defendant appeared before the Honorable Mary M. Lisi, U.S. District (now Chief) Judge for the District of Rhode Island, on March 21, 1997, and pled guilty to one count of conspiracy to defraud a financial institution, a class D felony (Count 1), and three counts of bank fraud, a class B felony (Counts 5, 7, and 8). Judgment of 6/30/97 (Doc. #68) at 1. On June 30, 1997, Judge Lisi sentenced Defendant to concurrent terms of imprisonment of twenty-four months, to be followed by a term of supervised release for three years as to Count 1 and five years as to Counts 5, 7, and 8, to run concurrently, commencing upon Defendant's release from imprisonment. Id. at 2-3. An assessment of $200.00 was also imposed. Id. at 4. As a special condition of release, Defendant was ordered to pay restitution in the amount of $123,198.37.[2] Id. at 6. As general conditions of supervised release, Defendant was not to commit another federal, state, or local crime or illegally possess a controlled substance. Id. at 3. Defendant's supervision commenced on October 28, 1998, with an expiration date of October 27, 2003.

On June 3, 2004, Defendant appeared before Judge Lisi after having previously admitted violating the conditions of his supervised release and was sentenced to fifteen months incarceration, forty-five months supervised release, with special conditions that he seek and maintain employment as well as participate in outpatient substance abuse treatment, and pay $123,198.37 restitution. Judgment of 6/3/04 (Document ("Doc.") #135) at 1-4. Judge Lisi modified Defendant's conditions of supervision on April 10, 2006, to include outpatient mental health treatment. Request for Modifying the Conditions of Supervision with Consent of Offender (Doc. #161 at 2. Supervised

[2] Defendant and his co-defendants are jointly and severally liable for the $123,198.37 restitution.

release recommenced on April 20, 2005, with an expiration date of January 19, 2009. See Supervised Release Violation Report (the "Violation Report") at 1.

On or about December 1, 2006, U.S. Probation Officer David S. Borrelli ("U.S.P.O. Borrelli") initiated a Petition for Summons for Offender under Supervision (Doc. #163) (the "Petition"), alleging that Defendant had violated four conditions of his supervised release. See Petition at 1-2. In response to the Petition, Judge Lisi ordered the issuance of a summons on December 4, 2006. See id. at 3.

**The Violation**

The Violation Report alleges that Defendant has violated the following conditions of supervision in the manner indicated:

**Condition #2: Defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**

Defendant failed to submit timely monthly reports to the Probation Department for twelve consecutive months from November 2005 to October 2006. The reports are due by the fifth of each month, and the number of days that each report was late is shown on the chart below:.

| Report Date | Date Submitted | Days Overdue |
|---|---|---|
| November 2005 | January 20, 2006 | 40 days |
| December 2005 | January 20, 2006 | 15 days |
| January 2006 | March 20, 2006 | 38 days |
| February 2006 | March 20, 2006 | 15 days |
| March 2006 | April 13, 2006 | 8 days |
| April 2006 | August 8, 2006 | 95 days |
| May 2006 | August 8, 2006 | 65 days |

| | | |
|---|---|---|
| June 2006 | August 8, 2006 | 35 days |
| July 2006 | October 11, 2006 | 67 days |
| August 2006 | October 11, 2006 | 37 days |
| September 2006 | October 11, 2006 | 6 days |
| October 2006 | Not yet submitted | N/A |

In each instance, U.S.P.O. Borrelli needed to direct Defendant to submit his overdue monthly supervision reports and admonish him for his failure to submit them in a timely fashion.

**Condition #3: Defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Defendant failed to make payments toward his financial obligation as directed by U.S.P.O. Borrelli on October 11, 2006. As to this violation, on October 11, 2006, Defendant met with U.S.P.O. Borrelli and signed a payment agreement indicating that he would make monthly payments of $10 per month toward his financial obligation. As of the date of the Violation Report (December 1, 2006), Defendant has failed to make any payments toward his financial obligation as directed by U.S.P.O. Borrelli.

**Condition #6: Defendant shall notify the probation officer at least ten days prior to any change in residence or employment.**

Defendant failed to notify U.S.P.O. Borrelli of a change in his employment status. As to this violation, on November 28, 2006, U.S.P.O. Borrelli conducted a home visit with Defendant and questioned him about his employment at Environmental Fire Protection. Defendant advised that his employment status had changed. Defendant could not provide a valid reason why he had not contacted U.S.P.O. Borrelli to explain this change in his

employment status within ten days of its occurring.[3]

**Special Condition: Defendant shall participate as directed in a program of mental health treatment approved by the Probation Department.**

Defendant failed to attend outpatient mental health counseling at Gateway Healthcare, Inc., as scheduled on June 14, 2006, June 29, 2006, August 10, 2006, August 24, 2006, September 21, 2006, October 5, 2006, October 19, 2006, November 20, 2006, and November 29, 2006. As to this violation, Defendant cancelled his June 14, 2006, psychiatric consultation with Dr. Chabot and required an extension on his psychotropic medication. Defendant then missed his June 29, 2006, counseling session with his therapist. On July 6, 2006, U.S.P.O. Borrelli telephonically contacted Defendant and verbally admonished him for his failure to attend counseling as scheduled. Defendant advised that he would attend appointments as required.

On August 10, 2006, Defendant failed to attend his counseling appointment with his therapist. U.S.P.O. Borrelli telephonically contacted Defendant on August 11, 2006, and reprimanded him for his failure to attend counseling and directed him to call his counselor should he have to cancel sessions. On August 24, 2006, Defendant failed to attend his counseling appointment with his therapist.

Defendant again failed to go to his counseling session with his therapist on September 21, 2006, and he did not attempt to

---

[3] At the December 15, 2006, hearing, Defendant disputed that, as alleged in the Violation Report, he had been fired from his position with Environmental Fire Protection for failing to return to work after being cleared by a physician for an injury he had sustained on the job. See Tape of 12/15/06 hearing. Defendant stated that his employer had only told him that if he could not do the full range of work required for the position, his employer had no work for him. See id. However, Defendant agreed that the employer's statement constituted a change in his employment status which he should have reported to U.S.P.O. Borrelli within ten days. See id.

call his counselor to cancel the appointment. On October 5 and 19, 2006, Defendant did not attend his counseling appointments with his therapist. The Violation Report alleges that Defendant did not make any attempt to call his counselor to cancel the sessions. At the December 15, 2006, hearing, Defendant stated that, as to these two appointments, he was unsure whether he called his counselor to cancel the sessions. See Tape of 12/15/06 hearing. U.S.P.O. Borrelli met with Defendant on October 27, 2006, and verbally admonished him for his ongoing failure to attend counseling as required. Defendant was told that should this behavior continue he would most likely be discharged from services and face violation.

On November 20, 2006, Defendant did not attend his counseling appointment with his therapist. The therapist also indicated that during their last session Defendant had disclosed that he was taking three times the prescribed dose of his antidepressant, Lexapro. U.S.P.O. Borrelli met with Defendant on November 28, 2006, and reprimanded him for his failure to attend counseling as well as failing to take his antidepressant medication as prescribed. Further, U.S.P.O. Borrelli advised Defendant that he was going to be discharged from counseling should he miss any more treatment sessions. Defendant failed to attend his counseling appointment with his therapist on November 29, 2006. His therapist indicated that he is seeking to discharge Defendant based on his failure to attend appointments and his failure to take his medication as prescribed.[4]

---

[4] Although the Violation Report states that Defendant failed to call and cancel his appointments on August 24, October 5, October 19, 2006, November 20, and November 29, 2006, see Violation Report at 3-4, Defendant stated at the December 15, 2006, hearing that he called his therapist to cancel these appointments, see Tape of 12/15/06 hearing. Accepting Defendant's statement as true, the Court, nevertheless, found that Defendant violated this condition of supervised release based on the fact that he had been discharged from the Gateway program

**Travel**

On December 4, 2006, Chief Judge Lisi ordered the issuance of a summons for Defendant to appear to answer to the Petition. See Petition at 3. The summons was served, and Defendant appeared before this Magistrate Judge on December 11, 2006. On that date, Defendant requested a violation hearing, and it was scheduled for December 15, 2006. At the hearing Defendant, both personally and through counsel, waived a violation hearing and admitted to the violations. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of supervision. Thereafter, the Court received sentencing recommendations from the Government and the defense and listened to Defendant speak on his own behalf. The Court announced the sentence it would recommend and that it would issue a written Report and Recommendation.[5]

**Law**

**Statutory Provisions**

Section 3583(e)(2) of Title 18 of the United States Code ("U.S.C.") provides that if the court finds a defendant to be a violator of the conditions of supervised release, the court may extend the term of supervised release if less than the maximum authorized term was previously imposed and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Fed. R. Crim. P. relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision. In this case, the maximum term of

---

for failing to attend appointments. See Letter from Robert B. Marshall, Senior Clinician, Family Outpatient Program, Gateway Healthcare, Inc., to U.S.P.O. Borrelli of 12/13/06.

[5] See n.1.

supervised release was previously imposed. Therefore, the term cannot be extended.

Pursuant to § 3583(e)(3) of Title 18 of the U.S.C., the court may, after considering certain statutory factors set forth in § 3553(a), revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision if the court, pursuant to the Fed. R. Crim. P. applicable to revocation of supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release. However, a defendant whose term is revoked under this paragraph may not be required to serve more than three years in prison if the offense that resulted in the term of supervised release was a class B felony. Here Defendant was on supervision for a Class B felony. Therefore, he may not be required to serve more than three years imprisonment upon revocation. However, since Defendant has already served fifteen months imprisonment as a result of one or more previous revocations, the statutory maximum term of imprisonment remaining is twenty-one months.

Section 3583(h) of Title 18 of the U.S.C. provides that when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release (here five years), less any term of imprisonment imposed upon revocation of supervised release. See id.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. Section 7B1.1(b) provides that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade. In this case, Defendant has committed Grade C violations.

Pursuant to §7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the court may revoke, extend, or modify the conditions of supervision. Here, as the maximum term of supervised release has already been imposed, the Court may not extend supervision, but may revoke or modify supervision.

Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any

portion of the minimum term. Should the court find that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) provides that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision which allows for alternatives for any portion of the minimum term applies to this matter.

According to §7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there is an outstanding restitution in the amount of $122,064.37.

Section 7B1.3(g)(2) of the U.S.S.G. provides that where supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the court may include a requirement that the defendant be placed on a term of supervised release upon release from imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. See id. (citing 18 U.S.C. § 3583(h)). In this case, the authorized statutory maximum term of supervised release is five years. A total of fifteen months imprisonment has been previously imposed for

violation of supervised rel ease. Therefore, the Court may impose the above-noted statutory maximum minus the fifteen months previously imposed minus the term of imprisonment that is to be imposed for this revocation.

Pursuant to §7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of I at the time of sentencing. **The Revocation Table contained in §7B1.4(a) of the U.S.S.G. provides that, for a Grade C violation with a criminal history category of I, an imprisonment range of three to nine months is warranted.**[6]

Section 7B1.5(b) of the U.S.S.G. states that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered for time previously served on post-release supervision.

**Disposition**

**Recommendations By Government and Defense**

The Government recommended that Defendant be sentenced to a term of imprisonment of six months with thirty-nine months supervised release with the added conditions of outpatient substance abuse and mental health treatment and full-time employment. Assistant United States Attorney Stephen Dambruch based this recommendation on the following factors: 1) the current violation is not based on an isolated event but involves a continuous course of conduct; 2) this is Defendant's second violation of supervised release in this case; 3) the Probation Department and Gateway Healthcare, Inc., tried to work with

---

[6] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

Defendant but he did not accept their help; 4) the Probation Department has exhausted its abilities to help Defendant; and 5) the letter from Gateway Healthcare, Inc., of 12/13/06 indicates Defendant's refusal to submit to drug tests.[7]

Assistant Federal Defender Kevin Fitzgerald recommended that the Court continue Defendant on supervised release. Mr. Fitzgerald cited the fact that the current violation did not stem from the commission of a new crime but primarily from Defendant's inability to submit timely monthly reports and to attend mental health treatment. Noting that Defendant suffers from depression, Mr. Fitzgerald suggested that these failures were attributable to the depression. He emphasized that the requirement that Defendant attend mental health treatment had come about as a result of Defendant's own request.[8] Mr. Fitzgerald further argued that Defendant will not receive mental health treatment or psychotropic medication if he is imprisoned at the Wyatt Detention Center. He represented that Defendant is currently seeking mental health treatment at another facility and has received a potential job offer tiling floors once he is medically cleared to work. Lastly, Mr. Fitzgerald observed that Defendant

---

[7] At the December 15, 2006, hearing, Assistant U.S. Attorney Dambruch submitted a letter from Defendant's therapist at Gateway Healthcare, Inc., to U.S.P.O. Borrelli. The letter advised that one of the events that had resulted in the closure of Defendant's case was "his failure to complete lab work requested by our Medical Director, Dr. Stephen L. Chabot." Letter from Marshall to Borrelli of 12/13/06 at 1. "The letter noted that "[t]he lab work also included an order for a urine drug screen." Id.

[8] On April 7, 2006, the Probation Department submitted a request to Judge Lisi to modify the conditions of Defendant's supervision by adding mental health counseling. See Request for Modifying the Conditions of Supervision with Consent of the Offender (Doc. #161). According to the request, Defendant advised U.S.P.O. Borrelli on April 6, 2006, that he was depressed and in need of mental health counseling. See id. at 2. Defendant asked if his conditions could be modified to include mental health treatment. See id. The modification was granted on April 10, 2006, by Judge Lisi. See id.

attended more counseling appointments than he missed since he had one scheduled appointment every week for six months.

**Court's Recommendation**

The Court is uncertain whether imposing a period of incarceration on Defendant will achieve the ultimate objective of getting him to comply with the terms of supervision in the future. However, Defendant has repeatedly failed to comply with the conditions of supervised release, and he has been repeatedly admonished by his probation officer regarding his non-compliance. The system of supervised release will have no credibility if defendants believe that they can ignore warnings from their probation officers because they can still receive "one more chance" from the judge if the probation officer files a violation. Defendants must understand that there are consequences to failing to follow the instructions of their probation officers. In this case, the Court feels compelled to recommend a period of incarceration not because of any particular confidence that it will cause Defendant to comply in the future (although the Court hopes that it will), but because without a such a sanction the system of supervised release will be undermined.

While it weighs in Defendant's favor that he is not being violated for committing a new criminal offense and that the violations are technical in nature, the number of times Defendant committed these violations with regard to submission of monthly reports (twelve) and keeping scheduled counseling appointments elevates the seriousness of this matter. It is clear from the Violation Report that the Probation Department made repeated efforts to get Defendant to comply with the terms of his supervised release. The Violation Report appears to have been filed by the Probation Department only as a last resort after repeated warnings and admonitions proved unavailing.

There is, however, one mitigating factor to which, upon further consideration, the Court concludes it did not give sufficient weight when it announced at the conclusion of the hearing that it would recommend a sentence of five months incarceration.[9] The fact that the requirement that Defendant participate in a program of mental health treatment was imposed as a result of Defendant's own request does cast that violation in a somewhat different light. While this circumstance does not excuse Defendant's failure to comply with treatment once it was ordered, it does make this particular violation somewhat less egregious than the record of nine missed appointments would otherwise suggest. Accordingly, instead of a sentence of five months imprisonment (which the Court had indicated it was recommending because Defendant had waived a violation hearing and admitted to the violation), the Court recommends a sentence of four (4) months imprisonment to be followed by a period of supervised release for forty-one (41) months.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to a term of imprisonment of four (4) months with forty-one (41) months supervised release. I further recommend that as a special condition of that supervised release he be required to pay the balance of the previously ordered restitution of $123,198.37. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by

[9] The Court indicated that the reason it was not imposing the six month sentence which the Government had recommended was because Defendant waived a hearing and admitted to the violation.

the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L. Martin

DAVID L. MARTIN
United States Magistrate Judge
December 20, 2006